# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JESSIE LEE KNOLTON,

          Petitioner,

                                    Case No. 12-12085
    v.                               HON. TERRENCE G. BERG

CARMEN PALMER,

          Respondent.

_____/

## OPINION AND ORDER
## DISMISSING PETITION FOR WRIT OF HABEAS CORPUS;
## DENYING CERTIFICATE OF APPEALABILITY; AND
## DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Jessie Lee Knolton, ("Petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529, and being a fourth-habitual offender, Mich. Comp. Laws § 769.12.  For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE**.**

## I.  FACTUAL BACKGROUND

Petitioner was convicted following a jury trial in the Oakland County Circuit Court.  This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

On September 29, 2009, Paul Karr, the victim, closed his business around 7:00 p.m. and drove to the First Place Bank on 12 Mile Road and Telegraph in Southfield to make a deposit. When Karr arrived at the bank, he exited his vehicle and began to walk through the parking lot towards the bank's main entry door. Suddenly, codefendant Edward Knolton (Edward), defendant's brother, approached Karr pointing a small, silver caliber revolver at Karr and stated "give it up." Karr was shocked and stood still for one to two seconds until defendant unexpectedly grabbed Karr's shoulders from behind and pulled Karr backwards. Karr resisted defendant's pull by hunching forward. However, defendant maintained his grip on Karr's shoulders while Edward began striking Karr in the head several times with a blunt object. During this attack, one of the two men removed Karr's cell phone, three checks, and a bank deposit slip from Karr's right cargo pants pocket. Then Karr, who was still bent forward and hunched over, pulled his gun out of his left hip holster and pointed it at Edward's knee. Once the two men saw Karr's gun, they stopped attacking him, ran to their vehicle, and drove away.

At least three people witnessed the armed robbery and the police were called. Shortly after 7:20 p.m., Officer Nicholas Smiscik, from the Southfield Police Department, began trailing defendant's vehicle southbound on the Lodge Freeway. After additional police backup arrived, Smiscik initiated a traffic stop and, ultimately, defendant and Edward were arrested. After a jury trial, defendant was found guilty of armed robbery.

*People v. Knolton,* No. 299159, pp. 1-2; 2011 WL 4811062 (Mich. Ct. App. Oct. 11, 2011) (footnotes omitted).

The Michigan Court of Appeals affirmed Petitioner's conviction. *Id; lv. den.* 491 Mich. 908; 810 N.W.2d 578 (2012).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.  Ineffective Assistance of Counsel.

II. Trial Court Abuse (sic) It's (sic) Discretion.

III. Prosecutorial Misconduct.

IV. Resentencing.

2

## II.  LEGAL STANDARD

Section 2254(d) of Title 28 of the United States Code, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the

following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a

state court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly."  *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our

3

federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S.Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  *Id.*  Indeed, "Section 2254(d) reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979)(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S.Ct. at 786-87. Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III.  ANALYSIS

### A.  Claims # 1 and # 3:  The ineffective assistance of counsel / prosecutorial misconduct claims.

The Court will discuss Petitioner's first and third claims together because Petitioner's first claim, pertaining to the ineffective assistance of trial counsel, is based on the failure of trial counsel to object to instances of prosecutorial conduct, which is the basis of Petitioner's third claim.

Respondent contends that Petitioner raised his ineffective assistance of trial counsel claim for the first time before the Michigan Supreme Court; therefore, it is unexhausted for purposes of habeas review.

When an appellant fails to appeal an issue to the Michigan Court of Appeals, the issue is considered waived before the Michigan Supreme Court. *Lawrence v. Will Darrah & Associates, Inc.*, 445 Mich. 1, 4, fn.2; 516 N.W. 2d 43 (1994); *Butcher v. Treasury Dep't.*, 425 Mich. 262, 276; 389 N.W. 2d 412 (1986). Therefore, Petitioner's failure to raise his ineffective assistance of counsel claim in his appeal to the Michigan Court of Appeals precluded the Michigan Supreme Court from considering the new issue that Petitioner raised in his application for leave to appeal before that court.

More importantly, raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because Petitioner failed to present his first claim on his direct appeal with the Michigan Court of Appeals, his subsequent presentation of this claim to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes. *See Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Farley v. Lafler*, 193 F. App'x 543, 549 (6th Cir. 2006).

The Court notes that Petitioner's first claim is unexhausted, because it was never presented to the Michigan Court of Appeals. However, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is

6

plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher*, 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c).  Because Petitioner's ineffective assistance of counsel claim lacks merit, in the interests of efficiency and justice, the Court will address Petitioner's claim, rather than dismiss the petition on exhaustion grounds. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense.  *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one.  'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir.

7

2011) (quoting *Harrington v. Richter*, 131 S.Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S.Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S.at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S.Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard:

> "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter*, 131 S.Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" four years ago "is precisely what *Strickland* and AEDPA seek to prevent."  *Id.* at 789.

In his first claim, Petitioner argues that his trial counsel was ineffective for failing to object to numerous instances of prosecutorial misconduct.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the result of the proceeding would have been different.  *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001).  As will be discussed below, the Court determines that the prosecutor's questions and comments did not deprive Petitioner of a fundamentally fair trial, thus, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks.  *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will

be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S.Ct., at 786–87).  This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations'". *Id.*  (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner begins by claiming that the "prosecutor's prejudicial, reversible misconduct also shifted the burden of proof to the defense during closing/rebuttal argument(s) which included:  'This is someone who, according to what he testified

to, just got out of prison.'" (Tr. May 25, 2010, p11) (Petitioner's Brief on Appeal, p. 21).

A review of the record reflects that the comment clearly referred to petitioner's brother and is taken out of context:

> Think about this, it's not a total stranger, it isn't somebody that he ran into in a coffee house and was driving around, this is somebody he's known for fifty years. This is somebody that on paper lives at the same address as he does. This is somebody who he's spending time with that day alone in a vehicle, just the two of them. This is someone who, according to what he testified to, just got out of prison.

(Tr. May 25, 2010, p. 11).

The Michigan Court of Appeals rejected Petitioner's claim, finding that "[t]he prosecutor did not state that defendant had just been released from prison, but did properly argue that the jury could reasonable (sic) infer that defendant knew about Edward's plan to commit armed robbery because Edward had recently been released from prison." *Knolton,* Slip. Op., p. 4.

The prosecutor did not commit prosecutorial misconduct by improperly shifting the burden of proof when she referred to the fact that Petitioner's brother had recently been released from prison. This comment made during closing argument was commentary based on the evidence produced at trial. During cross-examination, the prosecutor asked Petitioner how he would describe his relationship with his brother Edward. Petitioner responded to the question as follows:

> Well–well when he got out of prison my people's–my family was–they–they were trying to distant their self from him, but when I got out of prison, I didn't distant myself from him.

11

(Tr. May 24, 2010, p. 232).  Petitioner again brought to the attention of the jury that his brother had just been released from prison when asked, "You weren't both living at 9214 Westwood in Detroit?"  Petitioner responded, "I was living at 9214 Westwood, he wasn't.  He used the address 9214 for this living for getting out of prison,[...]" (Tr. May 24, 2010, p. 233).  The comment by the prosecutor pertaining to the release of Petitioner's brother from prison during closing argument was mere commentary on the evidence that petitioner produced at trial.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial; however, prosecutors must be given leeway to argue reasonable inferences from the evidence.  *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (internal citations omitted).  Because the prosecutor's remarks were based upon the evidence that had been introduced at trial, they were not improper.

Petitioner next argues that the prosecution improperly vouched for her witnesses by arguing in her closing summation that her witnesses had no motive to lie.  The Michigan Court of Appeals rejected this claim, finding that when viewing the remarks in context, the prosecutor was not claiming to have any special knowledge of the witnesses' truthfulness, but was simply arguing that objectively speaking, the witnesses had no motive to fabricate a story to implicate Petitioner in a crime.  *Knolton* , Slip. Op., p. 5.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of

guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence.  *Id.*  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.  *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."  *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted); *see also Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).  It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching.  *Byrd v. Collins*, 209 F.3d at 537 and n.43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated.  *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor.  *See*

*United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007); *U.S. v. Israel*, 133 F. App'x 159, 165 (6th Cir. 2005); *U.S. v. Parker*, 49 F. App'x 558, 563 (6th Cir. 2002); *see also Alder v. Burt*, 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003) (prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie).

Here, the prosecutor merely commented on the testimony given at trial by Rhonda Ginsburg and Kenneth Fisher to demonstrate that their testimony corroborated the testimony given by Paul Karr. (Tr. May 25, 2010, p. 12-13). During rebuttal, the prosecutor commented on the testimony given by Paul Karr stressing that Karr was adamant about the sequence of events and though the facts in his earlier statement were out of sequence, he testified truthfully and had no reason to lie. The prosecutor also explained that Karr had identified Petitioner as his assailant due to his confusion and his recollection that the assailant had bad teeth. When Petitioner was asked to smile, Karr indicated that Petitioner was the gunman based on his recollection that the gunman had bad teeth. Karr did not have the two brothers presented together for comparison purposes. Karr indicated that the incident took place in a matter of seconds and due to fear and shock, Karr "felt he [Petitioner] had bad teeth and that's what he hung his hat on." (Tr. May 25, 2010, pp. 29-30). Because the prosecutor's remarks were based upon the evidence

and reasonable inferences from the evidence, the prosecutor did not improperly vouch for the credibility of her witnesses.

As to the prosecutor's comments made on rebuttal regarding the officers not putting "their careers at risk," and having "no reason to lie," these comments were made in response to the defense allegation that an officer planted the bank slips in Petitioner's wallet. Rebuttal statements in response to a defendant's closing argument do not constitute prosecutorial misconduct. *United States v. Robinson*, 244 F.3d 503, 508 (6th Cir. 2001).

Petitioner also alleges that the prosecution shifted the burden of proof during rebuttal argument when she stated that only Petitioner and Edward would be able to present evidence that they discussed the robbery beforehand. "There's two people that would be able to present that evidence and I'm not one of them." (Tr. May 25, 2010, p. 29). This comment addressed (1) the defense theory that Petitioner was merely present and unaware of Edward's plan to commit a robbery; and (2) the prosecution's inability to produce evidence of such a plan that could only be obtained through the testimony of Edward or Petitioner.

The Michigan Court of Appeals rejected Petitioner's claim, finding that "the prosecution was properly responding to defense counsel's closing argument that there was no evidence of a prior discussion regarding the armed robbery between defendant or Edward when it stated that only defendant or Edward could present evidence regarding whether they had a conversation about committing the armed robbery beforehand." *Knolton*, Slip Op., p. 5.

15

Furthermore, the trial court instructed the jury that Petitioner was presumed innocent and that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt. (Tr. May 25, 2010, p. 31). In the present case, the prosecution's argument did not deprive Petitioner of a fair trial, because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002).

The prosecutor did not improperly shift the burden of proof by suggesting that Petitioner and his brother Edward were the only individuals who could testify that a discussion occurred between them before the robbery.

Petitioner's final prosecutorial misconduct argument alleges that the prosecutor committed misconduct during opening statement by informing the jury that Petitioner "does not have a job, does not have an income! (I 9)." Petitioner's citation actually references the portion of the record pertaining to the jury selection. The opening statement of the prosecutor begins on page 82 and does not contain any reference to Petitioner's income. The prosecutor later elicited testimony pertaining to Petitioner's income on the cross-examination of Petitioner. Trial counsel did not lodge an objection but instead questioned Petitioner about his SSI benefits during redirect examination (Tr. May 24, 2010, p. 243), and then addressed Petitioner's heath issues during closing argument, insinuating that his health issues may have contributed to this ignorance of his brother's plan to commit a robbery. (Tr. May 25, 2010, p. 18).

Petitioner also claims that the prosecutor committed misconduct by referring to the SSI income during her rebuttal.  In reviewing whether a prosecutor's comments constitute reversible error, it is appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements.  *See United States v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2001).  The prosecutor's reference to the SSI income during rebuttal was a proper commentary on the arguments set forth by trial counsel in closing argument.

Furthermore, even if the prosecutor's questions during the cross-examination of Petitioner about his income were somehow improper, they were not so flagrant as to amount to prosecutorial misconduct, in light of the fact that the comments were isolated and the evidence against Petitioner, including witness testimony, was very strong.  *See Smith v. Mitchell*, 567 F.3d 246, 256 (6th Cir. 2009).

Petitioner lastly contends that the cumulative effect of the prosecutor's comments and questions deprived him of a fair trial.  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).  Therefore, Petitioner's claim that the prosecutor's comments and remarks cumulatively deprived him of a fair trial is an inadequate ground for granting federal habeas relief because it is essentially a cumulative error claim.  *See e.g. Noel v. Norris,* 194 F. Supp. 2d 893, 931-32 (E.D. Ark. 2002).

Accordingly, Petitioner is not entitled to habeas relief on his first or third claims.

17

**B.  Claim # 2:  Abuse of Discretion / Jury Instruction Claim.**

Petitioner's second claim alleges that the trial court abused its discretion when it denied trial counsel's request to instruct the jury to consider the prior inconsistent statement of Paul Karr for both impeachment and substantive purposes.  More specifically, Petitioner argues that Paul Karr's written statement to the police after the assault could have been used as substantive evidence, pursuant to M.R.E. 803(1) or M.R.E. 803(2).  After hearing arguments, the trial court judge ruled that the prior statement was hearsay and did not fall under a hearsay exception.  (Tr. May 25, 2010, pp. 45-46).

The Michigan Court of Appeal upheld the trial court's decision to not provide the requested jury instruction and allowing the statement in only as impeachment evidence.  *Knolton*, Slip Op., p. 3.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law.  *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge.  *Jones v. United* States, 527 U.S. 373, 391 (1999).

18

Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). In determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

Moreover, Petitioner's claim that the state trial court erred in refusing to instruct the jurors that Karr's prior inconsistent statement could be used as substantive evidence as well as for impeachment is non-cognizable on habeas review because it involves merely an interpretation of state evidentiary law. *See Kyle v. Romanowski,* Case No. 08-14781, 2011 WL 977497, *6-7 (E.D. Mich. March 17, 2011); *Cf. Isaac v. United States*, 431 F.2d 11, 15 (9th Cir. 1970) (instruction that prior inconsistent statement could be considered as substantive evidence and not merely for impeachment not of constitutional dimension and not reversible error since substantial rights not affected).

In addition, the trial court judge's refusal to instruct the jurors that they could use Karr's prior inconsistent statement as substantive evidence did not

deprive Petitioner of his right to present a defense.  The Michigan Court of Appeals determined that Karr's prior inconsistent statement was not admissible as substantive evidence because Karr's written statement to the police had not been made under oath and thus was not admissible as a hearsay exception under M.R.E. 801(d)(1)(A) nor did the statement qualify as either a present sense impression or an excited utterance under either M.R.E. 803(1) or M.R.E. 803(2).  *Knolton,* Slip. Op., p. 3.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the due process of law.  *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence.  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."  *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a

risk of harassment, prejudice, or confusion of the issues.  *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).  Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

What is or is not hearsay evidence in a state court trial is governed by state law.  *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004) (internal citations omitted).  A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence.  *Id.* at 706.  This Court is therefore bound by the Michigan Court of Appeals' determination that Karr's statement did not fall within any of the hearsay exceptions and could thus not be used as substantive evidence.  The fundamental right to present a defense does not require that evidence deemed insufficiently unreliable, such as hearsay evidence, be admitted; hearsay is excludable, even if it is evidence that may be relevant to the defense.  *See McCullough v. Stegall,* 17 F. App'x 292, 295 (6th Cir. 2001).  Therefore, the trial court's refusal to instruct the jurors that Karr's statement to the police could be used as substantive evidence on the grounds that it was hearsay did not violate Petitioner's right to present a defense.

Petitioner is not entitled to habeas relief on his second claim.

21

### C.  Claim # 4:  The sentencing guidelines claim.

Petitioner lastly contends that the trial court improperly scored Offense Variable 19 of the Michigan Sentencing Guidelines at ten points for interfering with or attempting to interfere with the administration of justice.

State courts are the final arbiters of state law.  *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002).  Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim.  *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003).  Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence."  *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's

22

guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).

Petitioner is not entitled to habeas relief on his fourth claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  *See also Millender v. Adams,* 187 F. Supp. 2d at 880.  The Court will also deny Petitioner leave to appeal *in forma*

*pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp.
2d at 798.

## V. ORDER

Based upon the foregoing, it is **ORDERED** that the Petition for a Writ of
Habeas Corpus is **DISMISSED WITH PREJUDICE**.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**,
and Petitioner is **DENIED** leave to appeal *in forma pauperis*.


Dated:  July 28, 2014                          s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on July 28,
2014, using the CM/ECF system; a copy of this Order was also addressed to
Petitioner's attention and mailed to 183082 Muskegon Correctional Facility, 2400 S.
Sheridan, Muskegon, MI 49442.

                                               s/A. Chubb
                                               Case Manager